MUNICIPALITY OF ST. THOMAS AND ST. JOHN,
Plaintiff
v.
OMAR BROWN, Defendant
Civil No. 200 - 1953

MUNICIPALITY OF ST. THOMAS AND ST. JOHN,
Plaintiff
v.
AIMEE ESTORNEL, Defendant
Civil No. 201 - 1953

MUNICIPALITY OF ST. THOMAS AND ST. JOHN,
Plaintiff
v.
JACOB M. PAULUS, Defendant
Civil No. 202 - 1953

■■■■■■■■■■■■■■■■

## District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

### December 21, 1953

*For supplemental opinion and same cases on appeal, see 3 V.I.*

District Attorney (CROXTON WILLIAMS, Assistant District Attorney, of counsel), *for plaintiff*

MAAS AND BAILEY (WILLIAM W. BAILEY, of counsel), *for defendants*

MOORE, *Judge*

These three cases brought by the Municipality involve actions for debt on similar promisory notes and, consequently, were consolidated for the purpose of trial. The matter came on for hearing with the Municipality represented by the District Attorney, through Croxton Williams, Esquire, Assistant District Attorney, and Maas and Bailey, William W. Bailey, Esq., of counsel, representing the three defendants, Omar Brown, Aimee Estornel, and Jacob Paulus.

On May 27, 1946, under authority of the municipal ordinance entitled "To Help Native Industries and Small Businesses in the Municipality of St. Thomas and St. John" and dated November 23, 1945 (Bill No. 123; 33 V.I.C. § 4001 note), the Municipality negotiated a loan of $3000.00 to one Halvor Stridiron, which loan was secured by a series of notes of $500.00 each and indorsed by different individuals. The three defendants herein indorsed separate $500 notes, each of which was payable in 10 equal installments with interest at 4%, and payments to be made semiannually, the maturity date of the notes being May 26, 1951. The indorsers of the notes each signed a waiver of presentment, demand, protest and notice of protest at the time of maturity of the notes.

The maker of these notes paid only $50.00 on the principal and $12.00 on the interest on each of the notes in question, leaving a balance of $450.00 on the principal and $142.00 on the interest due on each note. Plaintiff sues to recover $592.00 from each defendant herein, the maker of the notes having absconded from the Virgin Islands

338

sometime prior to the maturity of the notes, but long after many of the semiannual installments became due. No demand was ever made for payment of any of these semiannual installments or interest thereon. Thereafter, the maker of the notes sold the machinery and left the island with no effort having been made to collect any of the principal and interest due thereon and without any notice being given to the indorsers.

Defendants contend that they have been discharged from liability by the negligent actions of the Municipality. In the first place, defendants argue, the Municipality did not enforce the mandatory provisions of the statute that "Payments shall begin six (6) months after the date of the loan and shall continue in equal semi-annual installments," and that the Municipality is thereby estopped by its own actions from demanding payment from the defendants. By failing to demand payment of the maker or the indorsers every six months after the date of the loan, as called for in the notes and required by statute, by failing to seize the equipment bought with the proceeds of the loan or other known assets of the maker of the note, and by failing to give the defendant indorsers notice of the failure of the maker to pay as scheduled and thus preventing them from proceeding promptly against the maker, the Municipality is at least guilty of laches, claim the defendants, such as should in equity bar it from maintaining this action. Defendants also contend that the Municipality has waived its right to sue the defendants by reason of its failure to demand payment from the maker on his default commencing March 27, 1947, and thereafter. And lastly, defendants strongly urge that the actions of the Municipality on and after March 27, 1947, when the second installment became due and payable, had the effect of an agreement between the Municipality and the maker of the notes for

the extension of the time of payment without the consent or knowledge of the defendants and without the right of recourse against the defendants being expressly reserved. Therefore, this extension of time to pay the installments granted by the Municipality, contrary to the requirements of the statute under which the loan was made and without the consent of the indorsers, operated to discharge the defendants from liability on the notes, as well as to cause the said notes to become null and void as to them. As authority for this position, counsel for defendants cites the Code of Laws for the Municipality of St. Thomas and St. John, (1921 Code) Title II, chapter 34, sections 120, 124, and 125 (11 V.I.C. §§ 182, 186, 187).

The plaintiff denies these contentions, claiming it was under no obligation to make any demand for payment before the notes matured, and that it had no duty, whatsoever, to notify defendants of any default or dishonor by the maker since the indorsers had expressly waived such notice.

As there are no facts in issue, there is just a single question for the Court to determine: Are the defendants liable on the notes?

Section 4 of the law, "To Help Native Industries", under which the loan was admitted to have been made, reads as follows: "No loan shall exceed Three Thousand Dollars ($3000.00); loans shall be made at the rate of 4% interest per annum to be repaid within a period of five years. Payments shall begin six months after the date of the loan and shall continue in equal semi-annual installments."

Defendants contend that this language is mandatory and that the Municipality was under an obligation to make demand for payment every 6 months or give notice of failure of maker to meet his obligation. Defendants insist that the waiver which they signed applied to demand and notice only at time of maturity of the notes and that

they did not waive any rights with respect to demand or notice regarding payment of the installments prior to maturity of the notes; that they indorsed the notes on the strength of the protection of this statute and under the belief that they would be informed of any default in the payment of installments by the maker, as 'is customary, in order that they might protect themselves, if necessary.

■ ■ The Court is of the opinion that the entire section 4 of the statute is clearly mandatory, there being no discretion granted as to the top amount of any loan, the rate of interest on any loan, or the terms of repayment. The only discretion allowed by this section of the statute is the length of time, up to five years, which may be granted in which to repay the loan in full. Without exception, and in the same language as the above-mentioned mandatory provisions, payments are to be made 6 months from the date of the loan and to continue in equal semi-annual installments, that is, every 6 months. A statute in such terms is more than merely directive and places an obligation on the Municipality to make demand for payment every 6 months regardless of date of maturity of the note. It follows that, if plaintiff had a duty to demand payment every 6 months, in case of default there was a duty to notify the indorsers thereof, which duty was not abrogated by the waiver signed by defendants, which waiver by its terms referred to notice and demand at time of maturity of the notes. Defendants had a right to depend on plaintiff's carrying out its duty according to the mandate of the statute. Defendants, therefore, had every right to expect that the notes would be collected in accordance with their terms and the provisions of the statute, and that if there were any defaults in payment that they, as indorsers, would be notified so that they might take any action as might be available to them before the maker left the jurisdiction.

341

It is well established that the holder of a note may do nothing to impair the remedy of the indorser against the maker, yet the Municipality failed to secure a chattel mortgage which it might well have done in the exercise of due diligence, failed to see that the loan was used for the purpose for which it was granted, and allowed the borrower to sell the equipment without any protest on its part — all of which jeopardized the position of the indorsers.

Defendants claim the protection not only of the specific statute under which the loan was granted, but of the local Negotiable Instruments Law (11 V.I.C. § 1 et seq.). Their position under this law might be briefly discussed.

Admittedly, the defendants are accommodation indorsers and as such, secondarily liable on the notes. The defendants contend, however, that they have been discharged from even this liability under the provisions of the Negotiable Instruments Law, (1921 Code) Title II, chapter 34. section 120 provides as follows:

"A person secondarily liable on the instrument is discharged:
(1). By any act which discharges the instrument;
(2) By the intentional cancellation of his signature by the holder;
(3) By the discharge of a prior party;
(4) By a valid tender of payment made by a prior party;
(5) By the release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;
(6) By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." (11 V.I.C. § 182).

Under section 124 of this chapter it is also provided that:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is voided, except as

342

against a party who has himself made, authorized or assented to the alteration and subsequent indorsers." (11 V.I.C. § 186)

And section 125 constitutes the following as material alterations:

"Any alteration which changes:
  (1) The date;
  (2) The sum payable, either for principal or interest;
  (3) The time or place of payment;
  (4) The number or the relations of the parties;
  (5) The medium or currency in which the payment is to be made; or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

Defendants argue that the failure of the Municipality to demand payment of the installments every 6 months as called for on the face of the notes constituted an agreement by the Municipality to extend the time of payment of which defendants had no knowledge and to which they did not consent. This alteration, defendants contend, amounted to a material change within the meaning of sections 124 and 125, thereby resulting in voiding the notes as to them.

The Court is of the opinion that since the maker of the note was present in the Municipality up to May 1st, 1949, and the plaintiff had every opportunity to demand payment and did not do so, that this, in effect, constituted an extension of the time of payment; that this extension of time being without knowledge or consent of the defendants discharged them from liability on the notes; and that the extension of time not only altered the notes as to date of payment but was also a failure to comply with the statute in the case, which compliance the defendants had every right to expect and rely upon.

It is therefore the conclusion of this court that the failure of the Municipality to demand payment every 6

months and to give notice to the indorsers of the maker's default was a violation both of the Negotiable Instruments Law of the Municipality and of the mandatory provisions of the statute to "Help Native Industries" under which the loan was made. Defendants are, therefore, discharged from liability, and judgment may be drawn in accordance with this opinion.